Curia, per

Nott, J.
I concur in opinion with the Chancellor, that there is nothing in this case to excite our prejudices against the claim of the defendant. I am not aware of any system of ethics that forbids a woman from securing her own property for her own use, even against the creditors of a profligate or imprudent husband. It is enough that she is ordained to take him for better and for worse, and ought at least to be permitted to secure her property against the last alternative. But, as is well remarked by the Chancellor, we are not required to decide *463 upon the policy of the law, but to administer it according to its provisions. I also concur in opinion with the Chancellor, that this is an embarrassing question. But lam inclined to think that the embarrassment arises more from some loose decisions of our Courts, which we are now perhaps bound to respect, than from any intrinsic difficulty in the subject itself.
The duty of a trustee is to hold arid employ the property for the benefit of the cestuique trust. Persons, therefore, who deal with him, must - do it upon his individual credit, and not upon the credit of the trust estate. Having the management of the estate, necessarily implies a power to provide for its maintenance and support. He is autho-rised, therefore, to pay the doctor’s bills, and taxes, to purchase plantation tools, and the necessary supplies for the slaves, dfcc. and to reimburse himself out of the proceeds of the crop. But that is-a matter with him and the cestuique trusts, with which the creditors have nothing to do. They are the creditors of the trustee and not of the estate. And even the trustee himself is not authorised to pledge the capital, but must keep the expenditures with the income of the estate. If the estate is unproductive, and in danger of consuming itself, he must apply to the court for advice, and may, under its direction, convert it into other property, or make such other arrangements as may remedy the evil; and there may be cases where the court will permit a part to be sold for the preservation of the rest; and indeed, cases of urgent necessity may exist, when there may not be time to apply to the court, in which a trustee may and must act upon his own responsibility, in which he will be indemnified out of the trust estate ; such for instance as the burning of a house, the destruction of a crop by a deluge, and the like. And it is only in cases of that description, of the necessity of which the court will judge, that he will be permitted to incumber the estate.
The duties of a trustee, therefore, are few and simple, and may be embraced in the few observations which have been made.
Our courts, however, have gone one step farther, and in a few instances have subjected the trust estate to the pay *464 ment of the debts of a creditor contracted with the trustee or his agent upon the faith of or for the use of the trust estate. But the principles upon which those cases are founded, and the extent to which they were intended to be carried, do not very distinctly appear. And it belongs to this court now to establish some principle and to give definition to the rules by which similar cases are in future to be governed. The first case, I believe, is that of Cater and Eveleigh, 4 Des. Rep. 19. In that case, Mr. Eveleigh, the agent of the trustees, had procured cotton gins for the use of the estate, and given his note for the purchase money. Mr. Cater, the creditor, sued upon the note, and recovered a judgment, upon which he sued out a ca. sa. and took the body of the defendant. He took the benefit of the insolvent debtors’ act, and not having any thing to surrender, the debt remained unpaid. The defendant then applied to the Court of Equity, to be paid out of the trust estate, which was decreed by that Court. But I presume the court meant out of the proceeds of the estate only, that is to say, that the trustee should first pay this debt out of the income, before he should pay over the balance to the cestuique trust; or in other words, that that debt should constitute the first charge on the funds in his hands, but not that he should break in upon the capital for that purpose. If that had been the intention, an order for a sale of the property for that object must have been obtained. The same observations will apply to the case of James vs. Mayrant, do. 551. Though that decree seems to be founded in part upon the peculiar circumstances of the case, which furnish no inference applicable to any other. The case of Montgomery and Eveleigh, 1 M’Cord’s Ch. 267, is also one depending in a great measure on its own circumstances ; and like the others, it is only the income and not the capital of the estate which is made liable. And that liability is founded as much on the ground of fraud in the cestuique trust, as on the other ground that the debt was contracted for the necessary supplies of the plantation. The court might, perhaps, in either of those cases, have directed a part of the estate to be sold to pay the debt, but it would not have done so without an inquiry into the necessity of the *465 measure, and whether the estate would be benefitted thereby. So that neither of those cases furnish any further or other inference than that the court may allow the creditor the same privilege of being remunerated out of the income of the estate, as would be allowed to the trustee for necessary disbursements. Now, to apply the principles of those cases, as I understand them, to the case under consideration ; I think the trustees would have been authorised to apply the income of the estate to the necessary repairs and supplies of the plantation, such as work horses, plantation tools and provisions, as well as to the support of the family, and that the court might, under the authority of the foregoing cases, direct the application of the funds to those objects. The trustees could not give to Mr. Reid other or greater powers than they themselves possessed. It was his duty, therefore, to keep up the repairs, to provide all the necessary implements of husbandry and supplies for the plantation, so that the estate should not be wasted, or its value impaired. Whatever else was made, after fulfilling the objects of the trust, would have been his own, to be disposed of as he thought proper. But he had no authority to incumber the estate beyond the income, nor to subject it to the payment of his debts.
With regard to the debts now sought to be recovered, I think they come within the authority of the cases referred to, and if Mr. Reid were now alive, perhaps the court might, under the authority of those cases, subject the proceeds of the crops in his hands to the payment of them. But the trust estate has terminated by his death, and I do not think they can be made a charge on the estate itself. I can see no distinction between a charge on the estate itself, and one on the income in the hands of Mrs. Reid. If there was remaining in the hands of Mr. Reid at the time of his death, of the income of the estate more than sufficient to meet the current expenses of the family and plantation, it may be made subject to the payment of those debts, as constituting a part of the trust estate. But further than that, I do not think we are authorised to go. The case of Bethune and Cook vs. Beresford and wife, does not support the Chancellor in subjecting the income of the widow’s *466 estate, to the payment of these debts. In that case, Beres-ford was still living, and entitled exclusively to the income of the estate. The court made his interest alone liable to the payment of the debts, and that only after a reasonable allowance for the support of the family. 1 Des. Rep. 174.
The decree in this case goes to subject the estate of the wife to the payment of the debts of the husband, and constitutes her a trustee of her own estate, for the benefit of his creditors. The extent of such a principle cannot be foreseen. If once admitted, it may be extended to the entire destruction of a marriage settlement.
The complainants’ debts were undoubtedly contracted on the credit of Mr. Reid, and his notes were taken for the purchase money. It can hardly be supposed that there are any funds in the hands of the trustees for the payment of them, for all the interest of Mr. Reid in the estate has been assigned, as appears by the decree, for the payment of his debts. If, however, the complainants think it worth the trouble and expense, an inquiry may be made into the subject.
It is therefore ordered and decreed, that the decree of the Chancellor be so reformed as to correspond with the principles herein laid down, and that it be referred to the Commissioner to inquire whether there remained in the hands of the said John Reid at the time of his death, any and how much of the income of the estate subject to the payment of complainants’ demands, and that he report thereon to the hext Court óf Equity for Orangeburg district. And that the fund be first applied to the payment f the costs of this suit, and if insufficient for that purpose that the complainants pay the costs.